UNITED STATES *v.* KENNETH KITTLESON AND E. W. ROLLOW (No. 4848)[1]

United States Court of Customs and Patent Appeals, December 21, 1955·

*Warren E. Burger*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief,. Customs Section (*Daniel I. Auster*, trial attorney, of counsel), for the United States.

. [Oral argument October 4, 1955, by Mr. Auster]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and COLE, Associate Judges

O'CONNELL, Acting Chief Judge, delivered the opinion of the court:

This is an appeal from a decision of the United States Customs Court, Second Division, one judge dissenting, granting a petition by the appellees, Kittleson and Rollow, for remission of additional duties assessed on an importation of hard sugar candy from Cuba. The candy in question was purchased on August 27, 1946, exported October 23, 1946 from Havana, Cuba and entered at Tampa, Florida on October 30, 1946, at the invoice price of 11.25 cents per pound. It was eventually appraised at 17.5 cents per pound, no request having been made meanwhile by the importer to amend the entry, and the additional duties here involved were assessed.

These proceedings are governed by section 489 of the Tariff Act of 1930 which in pertinent part provides:

Additional Duties. * * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except * * *, or in any case upon the finding of the United States Customs Court, upon a petition filed at any time after final appraisement and before the expiration of sixty days after liquidation and supported by satisfactory evidence under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. * * *

The only testimony offered by the petitioners was that of Kenneth Kittleson, the customs broker who handled the importation under consideration. He testified that the candy was entered at the invoice price, after he had consulted the consignee, Rollow, as to the purchase price. He further stated that he made oral inquiry of the appraiser's office for information as to price and was told that no information was available. He did not remember whether he had talked with the appraiser Kirkland or the Examiner Tryon, but is sure it was someone "who was qualified to give me that information." Both Kirkland and Tryon definitely deny that they discussed the present shipment with Kittleson, and Kirkland states that he and Tryon were the only ones authorized to give information of the kind in question.

Kittleson further testified that there had been three prior shipments of candy identical with that involved in this case, which were entered on February 21, April 24, and October 1, 1946, respectively, at the same price as the consignment here under consideration, that each of those shipments was appraised at the entered value; and that he received no information from any source indicating that the entered value was not correct until the merchandise was appraised, about two years after entry.

Kittleson was not advised of the proposed change in valuation or given an opportunity to amend the entry. Tryon states that such opportunity was not given because another entry of the same candy had been filed by Kittleson on November 14, 1946, at the same value as the present entry and Kittleson had later amended that entry to 20 cents per pound on the basis of information contained in the consular invoice. In view of the fact that that entry was changed while the present one was not, Tryon felt Kittleson had not acted in good faith, and was not entitled to an opportunity to amend his entry.

Section 489 requires that a petition for remission of additional duties be supported by satisfactory evidence. This calls for something more than a mere self-serving statement by the petitioner,

and we have held that "If such evidence is not offered, even though it may be inconvenient or impossible to do so, the petitioner must suffer the consequences." *Linen Thread Co.* v. *United States,* 13 Ct. Cust. Appeals 301, T. D. 41220.

In the present case there is no corroboration of Kittleson's testimony as to his alleged inquiries of the appraiser's office or the consignee, Rollow. So far as the former inquiry is concerned, Kittleson's testimony is rebutted, so far as rebuttal is possible, by the categorical denial of Kirkland and Tryon who stated that no inquiry was made of them and that they were the only ones who could have properly answered such an inquiry.

The consignee, Rollow, was not called as a witness, nor was the failure to call him satisfactorily explained. So far as appears from the record, he was available. The majority of the lower court stated that his failure to appear or have his testimony taken by deposition "does not militate against petitioner's case, since Rollow's deposition would have been repetitious of the information contained in the petition itself, which was signed jointly by Kittleson and Rollow."

The logic of that reasoning does not fulfill the legal requirement laid down by the decisions for satisfactory evidence either by Rollow, one of the petitioners, or by Kittleson, the other petitioner, that the entry in issue at less value than was finally appraised was without intent to defraud the revenues of the United States; and a finding that either party was merely careless in making the erroneous entry will not justify the Customs Court in deciding there should be a remission. *United States* v. *Fish,* 268 U. S. 607, 612, affirming 12 Ct. Cust. Appls. 307; *Glendenning, McLeish & Co.* v. *United States,* 13 Ct. Cust. Appls., 387, 390, T. D. 41320.

In *United States* v. *W. J. Westerfield,* 40 C. C. P. A. (Customs) 115, C. A. D. 507, we recently held, after citing an extensive and uniform list of reliable authorities, that "satisfactory evidence" consists of proof of the surrounding circumstances and conditions, together with a full and candid explanation of an importer's conduct at the time of entry, as well as before and subsequent thereto, showing that his action in making the entry at the lower rate and his failure to amend the same was in good faith; and that satisfactory evidence relative to such good faith means the amount of proof which would ordinarily satisfy an unprejudiced and reasonable mind.

The *Westerfield* case was decided by a divided court January 23, 1953, and late in the summer of that year, namely August 8, 1953, Congress through the Simplification Act, sec. 18 (b), provided that section 489 of the Tariff Act of 1930 (U. S. C. 1946 Edition, Title 19) be amended by deleting the first two paragraphs thereof. One of the paragraphs of said section 489 so deleted is the paragraph herein-

before set forth, the provisions of which are relied upon by Government counsel to support their contentions here.

A saving clause however in the said Customs Simplification Act, section 23, Public Law 243, 67 Stat. 507, was also enacted on the same day, which provided as follows:

Sec. 23. Except as may be otherwise provided for in this Act, the repeal of existing law or modifications thereof embraced in this Act shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil or similar case prior to such repeal or modification, but all liabilities under such laws shall continue, except as otherwise specifically provided in this Act, and may be enforced in the same manner as if such repeal or modification had not been made.

In a subsequent remission case, which had accrued prior to the said enactments, this court resorted to and applied the rigid rules of construction which had been previously enunciated and adhered to by us in cases such as the one at bar. *A. N. Deringer, Inc.* v. *United States*, 42 C. C. P. A. (Customs) 28, C. A. D. 565.

The fact that Kittleson was able to amend another entry for the candy here involved, and purchased on the same day, to show the increased value thereof of twenty cents per pound, shortly more than two weeks after the present entry was made at 11.25 cents per pound, definitely suggests that a diligent investigation by appellees at the time when the present entry was made would have readily disclosed that the lower value given herein was incorrect. In such a situation, as correctly pointed out in the dissenting opinion of the trial court, the proof submitted by appelles is not sufficient to sustain their petition for remission. *United States* v. *Pennsylvania Salt Mfg. Co.*, 26 C. C. P. A. (Customs) 232, 241, C. A. D. 22, *United States* v. *H. S. Dorf & Co.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392.

In the *Dorf* case we unanimously held that where the situation presented by the record is based upon facts tending to put a party on inquiry as to the proper value of the imported goods, lack of knowledge of the true value thereof cannot of itself be accepted by the court as an excuse or reason for the remission of additional duties; that it is no part of the official duty of the examiner or other customs agents to supply information as to the value of said merchandise; nor can such information, if supplied, be relied upon by the entrant to obviate the duty imposed upon him to ascertain and enter the true value of the imported goods.

Since appellees had the burden of proof to establish good faith in ascertaining the proper value, it is clear to us, upon careful consideration of the entire case, that the petitioners did not present evidence satisfying the requirement of the statute. The decision of the United States Customs Court is accordingly *reversed*.

COLE, Judge, dissenting.

I respectfully dissent from the decision of the majority in this case.

It is my belief that the majority have failed to distinguish between what will constitute satisfactory facts upon which to base a claim for relief, and satisfactory proof of those facts. I believe that the facts testified to in this case would be sufficient evidence, if true, to satisfy the requirement of the statute. The majority of the court seems to base its reversal upon its belief that the evidence is unsatisfactory from the viewpoint of establishing the truth of those facts. It seems to me that we should accept the finding of the lower court as final on the question of the truthfulness of the testimony, and limit our consideration to the question of whether such facts are legally sufficient to establish good faith.

It is true that some of our opinions have made rather stringent requirements for what is satisfactory evidence in remission cases. But I do not interpret these opinions as requiring importers and brokers to be more than human. In this case the testimony and documentary evidence showed, without contradiction, that the price at which the merchandise was entered was the actual purchase price of the merchandise. There is no indication, nor even intimation, of any fraud in the preparation of the invoice upon which the entry was based. The question is whether the appellees demonstrated that quantum of diligence in ascertaining the actual value at the time of actual shipment which good faith requires. The broker appellee, Kittleson, testified, and his testimony was supported by documentary evidence, that he had made during the preceding year several importations of merchandise similar to that involved here at prices substantially the same as the entered price in this case. The last previous importation at that price (which was accepted by the customs officials) was entered October 1, 1946, having been shipped from Cuba on September 26, 1946. The broker testified further that he had no knowledge of any information which would have led him to believe that there had been an increase in value between the date of purchase and the time of exportation. He testified that the manufacturer was in the process of liquidation and that he could not obtain any better information on the price at the date of exportation than the invoice price. He further testified (though controverted) that he had made oral inquiry at the appraiser's office as to whether there had been any change in value, and had been told that the customs officials knew of none. He also specifically stated that the entry was without intention to defraud the Government or to conceal or misrepresent the facts, and that the entry was made in good faith. Other facets of the case were brought out in the reappraisement proceedings which were before this court in *Kenneth Kittleson v. United States*, 40 C. C. P. A. (Customs) 85, C. A. D. 502, decided adversely to importer.

The circumstances as explained by the broker, coupled with specific avowal that there was no intent to defraud, tend to show a situation where there had been a stable market for a long period of time, and entry in good faith made upon the well warranted assumption that the market had remained stable in the absence of information to the contrary. If there were nothing other than these facts before the court, it would seem to me that the only issue would be whether or not the witness was telling the truth, and that this court should accept the finding of the lower court on this question. The field of customs is a businessman's field, and it seems to me that a prudent businessman in observing the stability of the market in the past, and the lack of any information indicating a change in the price even after inquiry of the customs officials, would have made the entry at the invoice price in complete good faith that such was the actual value at the time of exportation. While the law will make such requirements as are necessary to prevent fraud from wearing the dress of the honest man, it does not seem to me to require that good faith be affirmatively proved by exhausting every possible source of information, or by dotting every "i" and crossing every "t".

The general rule was stated as follows in *Vietor & Achelis* v. *United States*, 14 Ct. Cust. Appls. 13, 15, T. D. 41529: "The purchase price of goods is some evidence of their market value, and importer may rely on the price paid by him as the market value of promptly shipped merchandise in the absence of any fact or circumstance which would put a reasonably prudent man upon inquiry as to whether the price actually paid was not less than the market value." In that case, as in others, knowledge of the fluctuating value of German currency during the time between purchase and shipment (a matter of several months) was held to be such a circumstance. Passage of time was held to be such a circumstance in *American Import Co.* v. *United States*, 14 Ct. Cust. Appls. 44, T. D. 41550, (one month between invoice date and shipment date), but the instability of German currency was a factor in that case as well. In *Union Food Products Co.* v. *United States*, 13 Ct. Cust. Appls. 343, T. D. 41253, a lapse of apparently only a few days was held not to be such a long period of time as would have put a reasonably prudent person upon inquiry as to the probability of an advancement in price, while in *F. W. Woolworth Co.* v. *United States*, 16 Ct. Cust. Appls. 188, T. D. 42812, a lapse of eight months between purchase and exportation, and three months between invoicing and exportation, was held sufficient to put a reasonably prudent person on inquiry as to the dutiable value. See also *United States* v. *Sabin*, 14 Ct. Cust. Appls. 76, 78, T. D. 41581. In the *Union Food Products Co.* case, *supra*, we said:

It seems proper to say, however, that one of the things which might be calculated to put such a reasonably prudent person upon his inquiry before making

representations, to be acted upon by the appraiser, would be the existence of a long period of time between the time when he was familiar with the value abroad and the date of shipment. On this question, no hard and fast rule can be laid down, no definite period of time can be fixed which, in all cases, will be regarded as sufficient to put a reasonably prudent person upon inquiry before declaring the value of his goods. It must depend upon all the circumstances of the case. If a period of time had elapsed between the date of purchase and the date of shipment, which would suggest to the reasonably prudent mind the necessity for inquiry before making a statement of value, it will not be sufficient in an action of this character for him to say that he entered at the purchase price and had no additional information other than that gained at the time of the purchase.

Applying the foregoing rule to this case, I think, under all the circumstances, that an inordinately long period had not elapsed between the time the broker "was familiar with the value abroad and the date of shipment." It was testified that another shipment was entered less than a month before this shipment at the same price. At the same time, it must be remembered that the market for this product had been exceptionally stable for a long period of time. This stability in all probability was due to price regulations in effect in the United States upon resale of the product, which regulations, as stated by the court below, were lifted shortly after the entry of this importation. When this case was here before on the reappraisement issue, we held that domestic price regulations were not to be considered in determining what the foreign export value was. However, it does not follow that such regulations were not pertinent in determining what the *reasonably expected* foreign value was at time of exportation. In all probability the foreign export value rose between date of purchase and date of exportation of this shipment because of advance information or speculation as to the lifting of the price controls in the United States. An importer without such advance information, it seems to me, would be justified in entering the product at its purchase price in reasonable expectation that the stability of the market would continue, despite the passage of a month's time between the date he was last aware of the value and the date of exportation.

If there were no other circumstances than those outlined above, it would seem that the decision below would be dispositive of the case inasmuch as the court below, one of whose members was the trial judge and the only judge who had the opportunity to observe the witness on the stand, believed that he was telling the truth. Two other items are urged as reasons for reversing this finding of fact by the lower court. One is the fact that an entry made a few weeks after that involved here was voluntarily raised in value by the broker on the basis of information contained in the consular invoice. The second is the fact that the purchaser, Rollow, did not testify.

The majority opinion recognizes that the facts of the later importation are not conclusive as to the intent in making the entry involved

here, that is, that later knowledge of a later higher price does not mean that the earlier entry was not made in good faith. The majority opinion here, however, argues that the fact that the value of a later shipment could be found a few weeks later proves that the importer was not diligent in trying to find the price of this importation. Not only is it unsound to assume that value on one date can be determined with the same ease as it can on another date (it took the customs appraisers nearly two years to complete the appraisal in this case), but by raising this point on appeal the majority makes evidence of later knowledge of a later higher price conclusive evidence as to lack of diligence in the present case. It seems to me that if any such inference could ever have been drawn, that the decision of the court below in rejecting such an inference should be conclusive here.

The second point stressed by the majority in this case is the failure of the importer, Rollow, to testify. At the beginning of the trial, counsel for the petitioners stated that Rollow was 80 years of age and in ill health, and that counsel had not learned of his inability to testify until too late to get his deposition. Subsequently, leave to move for a commission to take Rollow's deposition was granted, but the deposition was not actually taken as the parties agreed to a stipulation that the petitioners waived the right to take the deposition. Much is made of this failure of Rollow to testify by the majority of this court. I do not think it of great significance, however. The testimony of Kittleson was sufficient to establish the circumstances surrounding the case, and although it might have added to the weight of the testimony to have Rollow testify as to what knowledge he had, it does not seem to me that his testimony was necessary to enable the court to decide whether or not a proper case for remission was made out. The most that could have been required was a formal assertion by Rollow that he had no knowledge of a higher price, and no intent to defraud the United States. It seems to me, as it did to the majority of the court below, that this formal requirement was satisfied by the petition which was signed and sworn to by Rollow as well as Kittleson.

There is a statement in the majority opinion of this court that satisfactory evidence calls for something more than a self-serving statement by the petitioner, and as support for this proposition there is given a quotation from the *Linen Thread Co.* case. As I understand that case, it holds only that the mere statement by a petitioner that he had no intent to defraud is not satisfactory evidence by itself. More than such a bald averment is given in this case, and there is a full explanation of the surrounding circumstances by the witness Kittleson. I am of the opinion that, if accepted as true, the explanation is sufficient to support the petition for remission.

If evidence is given showing circumstances which would be sufficient to show good faith if true, then we should not reverse the lower

court which has an opportunity to observe the witnesses and reach a sound conclusion as to their veracity. In this case it seems that an importer who relied upon the invoice price, the stability of the market in the past, and the lack of any contrary information either of his own, or of the customs officials, was justified in making the entry at such price in good faith.